IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

UNITED INVESTORS LIFE INSURANCE
COMPANY                                                                                          PLAINTIFF

v.                                                                          CIVIL ACTION NO. 2:04CV12-B-A

NATIONWIDE LIFE INSURANCE
COMPANY, et al.                                                                              DEFENDANTS

## ORDER

Plaintiff United Investors Life Insurance Company has moved this court to review selected documents *in camera* [129]. Of these documents, five documents have been withheld by the defendants on the basis of, among others, the common interest privilege, twenty-one were inadvertently produced and the subject of former motion practice before this court, and ten were also inadvertently produced and previously used by the plaintiff as exhibits in order to demonstrate the defendants' alleged inconsistent privilege assertions. Defendants Nationwide Life Insurance Company, Nationwide Life Insurance Company of America, Nationwide Life and Annuity Insurance Company, Nationwide Life and Annuity Company of America and Nationwide Financial Services, Inc. have moved the court for the return and like protective order of the inadvertently produced documents [133].

I.
SUMMARY OF THE FACTS AND ARGUMENT AT ISSUE

Plaintiff's motion describes the instant debate over thirty-seven documents as "merely a small window into the larger dispute between the parties regarding Nationwide's privilege logs." (Pl.'s Reply to Mot. Review at 4.) Currently, 4,600 documents have been produced in this the first phase of bifurcated discovery. Privilege logs as to all controverted documents have been

provided to the plaintiff, and a substantial portion of the plaintiff's argument relates to the sufficiency of the defendants' privilege log entries. The plaintiff contends that none of the documents identified within the logs at issue in the instant motions are privileged. In addition, the plaintiff supports its argument by identifying certain documents as to which the defendants initially asserted but thereafter abandoned a claim of privilege and which have now been produced.

Because there are numerous decisions rendered in this order, a roadmap may be helpful. The court will first discuss the motion for *in camera* review and the general requirements of the privilege logs. Second, the court will address attorney-client and common interest privileges and work product protection to aid in understanding those elements that must be contained within each privilege log entry, which may well lead to defendants' withdrawing those assertions that are not in accordance with applicable law. The court will next consider the privilege log entries at issue here. Finally, the court will determine whether items otherwise subject to protection should be disclosed to plaintiff by virtue of waiver due to the defendants' inadvertent production or returned to defendants.

II.
PROPRIETY OF AN *IN CAMERA* REVIEW

A federal court's denial or grant of a request for an *in camera* review in a diversity action is a procedural matter and, thus, determined according to federal law. *In re Federal Skywalk Cases*, 95 F.R.D. 477, 478 (D.C. Mo. 1982) (internal citations omitted). Federal courts maintain broad discretion in discovery matters, *Grand Oaks, Inc. v. Anderson*, 175 F.R.D. 247, 249 (N.D. Miss. 1997) (internal citations omitted), and the election to conduct an *in camera* review is well within the bounds of that discretion.

When a party asserts a claim of privilege as to otherwise discoverable information, "the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." FED. R. CIV. P. 26(b)(5). Blanket assertions of a privilege are unacceptable, and the court and other parties must be able to test the merits of a privilege claim. *United States v. El Paso Co.*, 682 F.2d 530, 541 (5th Cir. 1982) (citing *United States v. Davis*, 636 F.2d 1028, 1044 n.20 (5th Cir. 1981)). A Kansas district court has held that a party asserting a privilege must provide sufficient information within the log so that the court and the requesting party can determine whether the log entry satisfies *each element* of the asserted privilege; the court further found that any lesser description fails to comply with the requirements of Rule 26. *Simmons Foods, Inc. v. Willis*, No. 97-4192-RDR, 2000 WL 204270 at *5 (D. Kan. Feb. 8, 2000), *reviewed in* Alan F. Blakely, *Privilege Log Dilemma,* THE FEDERAL LAWYER, Nov./Dec. 2005, at 25. Although the *Simmons Foods* case is not controlling in this district, the court nevertheless finds the court's reasoning persuasive and cogent.

This court will not grant an *in camera* inspection where, as here, there are potentially hundreds, perhaps thousands, of documents which would require review. To inspect the documents at issue in this action would constitute a great and unnecessary expenditure of judicial resources. Rule 26 is clear in its requirement that the assertion of a privilege contain enough information so that the other party, and by logical necessity the court, can determine its applicability. As in *Simmons,* this court will enforce the terms of Rule 26. The court orders defendants to revise their privilege log entries to include each element of a claimed privilege or

protection so that the court and the plaintiff are able to "test the merits" within the four corners of the privilege log itself. Although this task may seem overly burdensome to defendants at first blush, it does not require expenditures of more time and effort than that which the defendants originally expended. For instance, defendants included the date created, creator, receiver, carbon-copied and/or blind carbon-copied parties where applicable, and a description of the document for each entry. The instant order requires only that the description include each requisite element of the privilege or protection asserted, including but not limited to the identities of persons.[1]

## III.
## PRIVILEGES

Under Rule 501 of the Federal Rules of Evidence, state law determines the applicability of a privilege in civil diversity actions where state law supplies the rule of the decision. *Dunn v. State Farm,* 927 F.2d 869, 875 (5th Cir. 1991). Mississippi privilege law thus governs this diversity action. Generally, the federal and Mississippi laws of privilege mirror one another, though there are slight but meaningful differences that are triggered in the instant situation.

Rule 502(b) of the Mississippi Rules of Evidence defines the attorney-client privilege as the client's right to refuse to disclose and prevent others from "disclosing confidential communications made for the purpose of *facilitating* the rendition of professional legal services to the client." (Emphasis added.) Rule 502 further requires that the confidential communications must have been made:

---

[1] The defendants may provide this information within each entry by any means reasonably formatted to assist counsel opposite and the court. Any identification must provide the court and plaintiff with enough information to ascertain that individual's relationship to the litigation (*i.e.*, third party, client representative and so forth). For example, the defendants may not identify a person as simply "attorney" since the court and the plaintiff must know who the attorney represents.

> (1) between himself or his representative and his lawyer or his lawyer's representative, (2) between his lawyer and the lawyer's representative, (3) by him or his representative or his lawyer or a representative of the lawyer to a lawyer or a representative of lawyer representing another party in a pending action and concerning a matter of common interest therein, (4) between representatives of a client or between the client and a representative of the client, or (5) among layers and their representatives representing the same client.

*Id*. To remain protected, a communication must have not been intentionally disclosed to third persons unless the disclosure was "made in furtherance of the rendition of professional legal service to the client or disclosure was reasonably necessary for the transmission of the communication." MISS. R. EVD. 502(a)(5). Of course, the privilege is a two-way street, providing protection whether the lawyer communicates to the client or vice versa. MISS. R. EVD. 502 cmt.; *Hewes v. Langston*, 853 So.2d 1237, 1244 (Miss. 2003).

Because attorneys often desire to more narrowly construe Rule 502 than is required, it bears repeating that the rule does not demand that the communication solely contain legal analysis or advice; rather, privilege protection attaches to those communications that would *facilitate the rendition of* legal services or advice. *Hewes*, 853 So.2d at 1244 (quoting *Dunn*, 927 F.2d at 875) (applying Mississippi law)). More importantly, the Mississippi Supreme Court describes its interpretation of the attorney-client privilege as being broad and has held that "the privilege relates to and covers all information regarding the client received by the attorney in his professional capacity and in the course of his representation." *Id*. (quoting *Barnes v. State*, 460 So.2d 126, 131 (Miss. 1984).[2]

---

[2] For instance, research conducted by an attorney in response to his client's request achieves privileged status. *Id.* at 1247 (citing *Nguyen v. Excel Corp.*, 197 F.3d 200, 206 (5th Cir. 1999)).

5

A client may be a corporation, and a client's representative may be a corporate employee who has "authority to obtain professional legal services, or to act on advice rendered pursuant thereto, on behalf of the client, or an employee of the client having information needed to enable the lawyer to render legal services to the client." MISS. R. EVD. 502(a)(1), -(2). The Comment warns that the potential group of employees embraced by the rule may be greater than that garnered through operation of the "control group" test. MISS. R. EVD. 502 cmt.

On the other hand, Rule 502 does not broadly construe the common interest privilege. According to the Comment, the common interest privilege extends to "statements made in multiple party cases in which different lawyers represent clients who have common interests." *Id*. The text of the Comment in conjunction with the rule itself makes clear that the party asserting the privilege must have been, at the time of the communication, a co-party to pending litigation with the party to whom it bears a relationship of common interest. The same-action, pending-litigation requirement drastically differs state from federal common interest privilege law. *See In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001) (allowing application of the common interest privilege to *potential* co-defendants). The defendants' common interest privilege assertions are invalid under Mississippi law, and the documents are not protected here by the common interest privilege.

## IV.
## WORK PRODUCT DOCTRINE

The work product doctrine does not fall under the auspices of Federal Rule of Evidence 501; the federal law which controls is codified at Rule 26(b)(3) of the Federal Rules of Civil Procedure. *Dunn*, 927 F.2d at 875. Under the general application of the doctrine, a party cannot discover documents or tangible things otherwise discoverable and "prepared in anticipation of

6

litigation or for trial by or for another party by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." FED. R. CIV. P. 26(b)(3). Thus, the doctrine protects documents prepared by a party's agent just as it would a party's attorney. *E.g., United States v. Nobles*, 422 U.S. 225, 238-39 (1975)." FED. R. CIV. P. 26(b)(3).

The work product doctrine affords no protection to materials prepared in the ordinary course of business, *United States v. El Paso Co.*, 862 F.3d 530, 542 (5th Cir. 1982) (citing Advisory Committee Note to Federal Rule 26(b)(3)), *cert. denied*, 466 U.S. 944 (1984), and just as with the attorney-client privilege, the doctrine does not extend to the relevant, underlying facts. *See, e.g., Dunn v. State Farm Fire & Cas. Co.,* 122 F.R.D. 507, 510 (N.D. Miss 1988); *Upjohn*, 449 U.S. 383, 395-96 (1981). The Fifth Circuit applies a less-than-stringent standard in analyzing whether an item was prepared in anticipation of litigation; specifically, "litigation need not necessarily be imminent as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *United States v. Davis*, 636 F.3d 1028, 1040 (5th Cir. 1981).

V.
PRIVILEGE LOGS PRESENTLY BEFORE THE COURT

In preparing a privilege log, a party must not invoke several protections or privileges where only one applies. Erroneous assertions undercut the invoking party's credibility. For instance, when asserting a right to nondisclosure, an attorney should not state "attorney-client privilege and/or work product." Either the attorney-client privilege and the work product doctrine protect the document or not; opposing counsel and the court should not be left with deciphering that which is the asserting party's burden. Counsel should be aware of the elemental differences between those assertions and choose accordingly.

7

### A. The So-called "Common-Interest Privilege" Documents

Defendants assert both privilege and work product protection as to five documents: UINW 0032731, UINW 0037627, UINW 0254000-01, UINW 0254002-03, and UINW 0310947. The privilege log entry for UINW 0310947 conveys that the e-mail reflects legal advice from Nationwide's counsel regarding the regulatory investigation of Waddell and Reed. This communication may have been conveyed "for the purpose of *facilitating* the rendition of professional legal services to the client" as required under Mississippi Rule of Evidence 502(b) and, thus, may be protected by the attorney-client privilege, but there is not enough information in the log for the plaintiff or the court to make that determination because the log does not indicate whether the communication was among Nationwide's attorneys and their representatives. For this reason, the defendants must amend this entry to include every element of the attorney-client communication if they still maintain such a claim, including identities of attorney and representatives. The assertion of work product protection appears on its face to be inappropriate, but the court will allow defendants to revise the privilege logs and strike this assertion if that is in fact the case. On the other hand, the common interest privilege cannot apply because there was no pending suit where the defendants were situated as a co-party with Waddell & Reed, and that assertion is hereby stricken by the court. The privilege log as to the remaining entries was not provided to the court; consequently, the court is incapable of rendering any decision as to them.

### B. Inadvertently Produced Documents

Privilege log entries for documents UINW 0081358, UINW 0081359, UINW 0059535, UINW 0059536, UINW 0059513, UINW 0313943, UINW 0313982, UINW 0060683, UINW 0067772-74, UINW 0039717-19, UINW 0059486, UINW 0059487, UINW 0059488 and UINW

0059534 lack sufficient information for the court to determine the applicability of the attorney-client privilege or work product protection by not, among other things, identifying with whom this advice originated. "Legal advice" alone is not sufficient in asserting a privilege. Again, defendants must list each element of the protection asserted and identify the involved persons.

In regard to the documents listed immediately above, the court finds certain arguments unpersuasive and deems it necessary to correct specific contentions. For example, the plaintiff asserts that the attorney-client privilege cannot be invoked as to documents UINW 0060683, UINW 0067772-74 and UINW 0039717-19 because the corresponding entries do not list an attorney as the original creator of the document. The court agrees with the defendants that the mere fact that an attorney is copied on an e-mail does not in and of itself remove it from the auspices of the attorney-client privilege; however, the applicable rule also protects communications between representatives of the client and between the client and the client's representatives so long as the communications are "made for the purpose of facilitating the rendition of professional legal services to the client." MISS. R. EVD. 502(b). Plaintiff also claims that documents UINW 0059486, UINW 0059487, UINW 0059488 and UINW 0059534 must be disclosed due to their wide dissemination. Granted, the size of distribution may raise an inference that the communication was not kept private; however, the court cannot determine from the facts presented within the log entries whether the individuals or members of the "[i]nternal listserve for Nationwide employees on Waddell & Reed" constitute third persons whose inclusion nullifies a finding of confidential or third persons to whom disclosure was in furtherance of the rendition of legal services or representatives of the client. This lack of information prevents the court at this juncture from striking the assertion of privilege without more information.

Furthermore, the entries for documents UINW 0039717-19, UINW 0000173-75, UINW 0108492-93, and UINW 0033062-63 are insufficient solely due to the court's inability to ascertain the individuals' identities so that it can determine whether their involvement prevents protection by Rule 502; defendants must remedy these deficiencies by providing additional information as discussed above.

VI.
INADVERTENT WAIVER BY DISCLOSURE

State law determines whether a party has waived its attorney-client privilege due to inadvertent disclosure. *In re Avantel, S.A.*, 343 F.3d 311, 323 (5th Cir. 2003) (citing *Hyde Const. Co. v. Koehring Co.,* 455 F.3d 337, 340-42 (5th Cir. 1972); *Alldread v. City of Grenada,* 988 F.2d 1425, 1433 (5th Cir. 1993). Mississippi state courts have not spoken to the issue of waiver of the attorney-client privilege by inadvertent disclosure, but the Fifth Circuit did address the issue in *Alldread v. City of Grenada,* 988 F.2d 1425 (5th Cir. 1993). Because Mississippi state courts often utilize Fifth Circuit law where state law is silent, *see, e.g., Hewes v. Langston*, 853 So.2d 1237, 1246 (Miss. 2003), the court finds *Alldread* proper authority on the matter and utilizes its test in determining waiver of the attorney-client privilege. If the court finds that the defendants did not waive the attorney-client privilege as to these materials, then it follows that the defendants did not waive work product protection where asserted.[3] The non-exhaustive

---

[3] In fact, *Alldread* and its multi-factor test were derived from *Hartford Fire Insurance Company v. Garvey*, a suit addressing work product waiver. 109 F.R.D. 323 (N.D. Cal. 1985). Numerous courts utilize similar multi-factor tests when determining whether a party has waived work product protection due to inadvertent disclosure. *See U.S. v. Keystone Sanitation Co.,* 885 F.Supp. 672 (D.C. Pa. 1994); *Edwards v. Whitaker,* 868 F.Supp. 226 (M.D. Tenn. 1994); *Milford Power Ltd. v. New England Power Co.*, 896 F.Supp. 53 (D.C. Mass. 1995); *Wallace v. Beech Aircraft Corp.*, 179 F.R.D. 313 (D.C. Kan. 1998). However, the court does not need to decide that question in this case.

*Alldread* factors are: (1) the reasonableness of precautions taken to prevent disclosure; (2) the amount of time taken to remedy the error; (3) the scope of discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness. 988 F.2d at 1433.

The court previously addressed the issue of waiver by inadvertent production in the November 20, 2005, Order [122] wherein the court found that the defendants had not waived their attorney-client privilege as to an e-mail later titled Exhibit 107. Because that determination was also based upon the *Alldread* factors, the parties rely heavily on the court's analysis from the November 20 Order, and the court incorporates the findings made in that order. The court's analysis of the first *Alldread* factor regarding the reasonableness of precautions and the third factor regarding the scope of discovery remains unchanged as the underlying facts have essentially remained constant since the November 20 Order. Thus, the first factor presents a close question and is afforded lesser weight than the remaining factors, and the third factor heavily favors the defendants.

The second *Alldread* factor looks to the amount of time taken to remedy the error. The court again finds that this factor relates more to a party's response time as opposed to time actually expended in remedying the situation; a contrary finding would unjustly reward a party for its continued retention of documents inadvertently produced to it. The amount of time will be measured from the time when counsel *realizes* that there has been inadvertent production. *See Id.* at 1433. On September 16, 2005, defendants discovered that they had inadvertently produced the e-mail later titled Exhibit 107 when plaintiff's counsel introduced the document at the deposition of Eric Henderson; the defendants requested that plaintiff return the document at the deposition, which the plaintiff refused. According to defendants, immediately following the

11

Henderson deposition, they initiated an investigation into their document production to ascertain how Exhibit 107 came into plaintiff's possession. Four days after the Henderson deposition, the defendants learned of other inadvertently produced documents and requested their return. However, the defendants later discovered that ten other documents were inadvertently produced when the plaintiff attached these documents to a reply in this matter. Again, the defendants requested their return without delay. In light of their response time, the court finds that the second factor favors the defendants.

The fourth factor requires an examination of the extent of the disclosure. The *Alldread* court did not elaborate on this factor; thus, the court adopts the interpretation of "extent of disclosure" from *Hartford Fire Insurance Company v. Garvey*, the authority from which the five factors were derived. 109 F.R.D. 323 (N.D. Cal. 1985). The *Hartford* opinion states, "the disclosure was complete in that the contents of the documents were probably learned on inspection and copies of the documents were actually turned over," which favored a finding of waiver. The court finds that this situation mirrors *Hartford*. The plaintiff previously used ten of these documents as exhibits to its earlier motion on the subject [103] and carefully highlighted the portions of text that had been redacted in identical, previously produced documents. This activity coupled with the instant motion practice renders it highly likely that the plaintiff conducted an extensive and thorough review of all inadvertently produced documents. Upon reviewing the documents submitted by the plaintiff, the court also concludes that a great deal of information was conveyed by the inadvertently produced documents. Consequently, this factor favors the plaintiff despite the fact, as argued by defendants, that the plaintiff may not have reviewed the documents until after the defendants requested their return.

The fifth and final factor considers the overriding issue of fairness.  As in the November 20 Order, the court again deems the attorney-client privilege's purpose as protecting "'against both disclosure and use,' and '[p]reventing the latter is sufficient to promote at least one of the purposes of the privilege.'" *In re Avantel, S.A.*, 343 F.3d at 324 (quoting *United States ex rel. Bagley v. TRW, Inc.*, 204 F.R.D. 170, 184 (C.D. Cal. 2001) (applying Texas law).  The issue of fairness must logically center around the use of the inadvertently produced documents as the disclosure itself is merely a prerequisite to the court's consideration of the *Alldread* factors.  The plaintiff contends that the overriding considerations on the fairness analysis should be its inability to use the inadvertently produced documents, which hindered its discovery efforts, and the simple fact that it had no way of ascertaining that the documents were not intended to be produced.  Under this prong, a party's *inability to use* an inadvertently produced item is not unfair as such an assertion simply begs the question; on the other hand, that a party had used and relied on a document acquired through inadvertent production without prior objection by the producing party would be significant.  Nor does the fact that the plaintiff had no clear indication on the documents that they were inadvertently produced aside from the nature of the communication itself tip the scales in plaintiff's favor.  The court agrees with the defendants' proposition that it would "not be fairer to turn over privileged documents, none of which Plaintiff has relied upon in the discovery process, than to return them to Defendants . . . ." (Def.'s Resp. at 18.)  The plaintiff simply cannot, without more, prevail under this factor.

Though the fairness factor does not greatly favor the defendants, the sum of the factors do weigh against the plaintiff.  The court thus finds that the defendants have not by inadvertent waiver waived their right to any attorney-client privilege or work product protection.

13

# VII.
# CONCLUSION

The defendants shall amend their privilege logs so that each entry includes the elements required as discussed within this order. The defendants shall also include within each entry, where necessary, or by separate attachment the identity of each person listed within the logs in the *briefest* form that would allow for this court to ascertain his identity in such a way that a privilege or work product protection assertion can be validated or rejected. The court will not allow motions, exhibits, affidavits or declarations to supplement the log.

Defendants subject themselves to the imposition of sanctions if the defendants erroneously assert a privilege or protection in the future. From this point forward, the court will not grant time to amend any privilege log and will simply strike those assertions that do not clearly conform to the applicable rules.

It is, therefore,

**ORDERED:**

1. That the plaintiff's motion for *in camera* review [129] is DENIED.

2. The defendants shall amend their privilege logs in accordance with this order and submit these revised logs to the plaintiff no later than March 6, 2006. If the plaintiff disputes the defendants' assertions of privileges or work product protection, the plaintiff shall have until March 20, 2006, to move the court to compel production based upon insufficient privilege log entries.

3. The defendants' motion to compel the return of documents protected by the attorney-client privilege and work product doctrine and like protective order [133] is GRANTED only to the extent that the plaintiff shall no later than March 20, 2006, return all

documents that were inadvertently produced and are not the subject of the above-referenced motion to compel. The plaintiff shall also destroy every copy of each returned document and is hereby prohibited from using any information from portions of those returned documents that were previously redacted or otherwise not produced.

This, the 6th day of February, 2006.

    /s/   S. ALLAN ALEXANDER
UNITED STATES MAGISTRATE JUDGE