IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

UNITED INVESTORS LIFE INSURANCE
COMPANY                                                                                                  PLAINTIFF

V.                                                                      CIVIL ACTION NO. 2:04CV012-B-A

NATIONWIDE LIFE INSURANCE COMPANY
AND/OR NATIONWIDE LIFE INSURANCE
COMPANY OF AMERICA, NATIONWIDE LIFE
AND ANNUITY INSURANCE COMPANY
AND/OR NATIONWIDE LIFE AND ANNUITY
COMPANY OF AMERICA, NATIONWIDE
FINANCIAL SERVICES, INC. AND/OR
NATIONWIDE FINANCIAL CORPORATION                                              DEFENDANTS

**MEMORANDUM OPINION**

This cause comes before the court upon the defendants' motion for summary judgment. Upon due consideration of the motion, response, exhibits, and supporting and opposing authority, the court is ready to rule.

Factual and Procedural Background

United Investors brought this action alleging that the Nationwide defendants wrongfully acted in concert with Waddell & Reed Financial, Inc., to effectuate the switching of variable annuity policies from United to Nationwide by means of an illegal "mass replacement scheme" or "aggressive migration strategy." The plaintiff previously sued Waddell & Reed in Alabama state court on claims arising from the same set of alleged facts. *See Waddell & Reed, Inc. v. United Investors Life Ins. Co.*, 875 So. 2d 1143 (Ala. 2003). United brought claims against Waddell & Reed for, *inter alia*, tortious interference with contractual relations, promissory fraud, breach of contract, and conversion. *Waddell & Reed, Inc.*, 875 So. 2d at 1152. The Alabama Supreme Court found that the elements of promissory fraud and fraudulent suppression were not

present and that Waddell & Reed was not a stranger to the contract and therefore could not be held liable for tortious interference. *Id.* at 1154, 1160.

United now seeks recourse from Nationwide. The present complaint charges Nationwide with violations of Section 43(a)(1)(B) of the Lanham Trade-Mark Act,[1] unfair competition and commercial disparagement, tortious interference with contractual relations, civil conspiracy, and breach of fiduciary duty. Waddell & Reed is not a party to the present action.

Nationwide moved to dismiss United's complaint on the grounds of *res judicata*, collateral estoppel, and statute of limitations. This court found that United's claims were virtually identical to those litigated and lost in Alabama but denied the motion to dismiss, finding that Nationwide's arguments were inappropriate for such a motion and should be brought in a motion for summary judgment. The parties were allowed to conduct discovery on the *res judicata*, collateral estoppel, and statute of limitations issues. Nationwide has now moved for summary judgment.

## Standard of Review

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and by . . .

---

[1] 15 U.S.C. § 1125

affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274 (quoting Fed. R. Civ. P. 56(c), 56(e)). Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986).

## Analysis

### I. Derivative Liability Claims

The court must begin its analysis by examining the nature of United's claims against Nationwide. In ruling on the defendants' motion to dismiss, the court noted that the claims brought against Nationwide in the present case are basically identical to those brought against Waddell & Reed in the Alabama litigation. It seems clear that the present suit against Nationwide originated as an action to seek recovery under a derivative liability theory. The second amended complaint and the propounded discovery primarily advance derivative liability claims. United now asserts, however, that its claims against Nationwide are not based solely on derivative liability but that Nationwide is liable as a joint tortfeasor. United contends that Nationwide is liable for individual wrongful acts that are separate from the issues addressed in the Alabama litigation. According to Nationwide, United's argument amounts to no more than a refashioning of its case at the last minute in an attempt to circumvent the statute of limitations and the doctrines of *res judicata* and collateral estoppel. The defendants argue that United has transformed a complaint about a mass replacement scheme carried out through the acts of

3

Waddell & Reed into a summary judgment case in which "the focus is on the [alleged] repeated wrongful acts of Nationwide itself, not on the acts of [Waddell & Reed]."

"*Res judicata* is a broad, judicially developed doctrine, which rests upon the ground that public policy, and the interest of the litigants alike, mandate that there be an end to litigation." *Old Republic Ins. Co. v. Lanier*, 70 So. 2d 922, 927 (Ala. 2000) (quoting *Hughes v. Martin*, 533 So. 2d 188, 190 (Ala. 1988)). The ruling of the court on the contested issue binds the litigants, and once the issue is tried, it "shall be considered forever settled between those same parties and their privies." *Lanier*, 70 So. 2d at 927-28. The requisite elements of *res judicata* are "(1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions." *Id.* (quoting *Equity Resources Management, Inc. v. Vinson*, 723 So. 2d 634, 636 (Ala. 1998)). If the four elements are present, any claim that was or that *could have been* adjudicated in the prior action is barred from further litigation. *Id.*

The first two elements are not in dispute in the present case. The third element – substantial identity of the parties – is also satisfied. Although Alabama retains the "mutuality of estoppel"[2] requirement, Alabama courts and their federal counterparts recognize an exception where "the liability of the defendant is altogether dependent upon the liability of one who was exonerated in the prior suit." *Griffin v. Bozeman*, 173 So. 857, 859 (Ala. 1937). It is well-settled in Alabama "that where a defendant is held liable only because he is responsible for the act of

---

[2]Mutuality of estoppel is "[t]he collateral estoppel principle that a judgment is not conclusively in favor of someone unless the opposite decision would also be conclusively against that person." *Black's Law Dictionary* 1041 (7th Ed. 1999).

another, he cannot be held liable if such other is exonerated." *American Southern Ins. Co. v. Dime Taxi Serv., Inc.*, 151 So. 2d 783, 785 (Ala. 1963).

The fourth element is also present in this case. The court finds that the Alabama action and the present action arise from "the same nucleus of operative facts" and "seek recovery for the same injury." *Lanier*, 790 So. 2d at 928 (Ala. 2000).

Each count of United's second amended complaint seeks to hold Nationwide derivatively liable for Waddell & Reed's conduct. For instance, Count One expressly alleges that "[t]he Nationwide Defendants, *through Waddell & Reed and its officers, executives, employees, servants, and/or agents*, made false and/or misleading statements about United and its products...." Likewise, Counts Two through Four assert claims that would make Nationwide's liability "altogether dependent upon the liability" of Waddell & Reed.

In response to the summary judgment motion, United attempts to salvage its claims by refashioning them as grounded in joint tortfeasor liability. A claim against a joint tortfeasor is based on the tortfeasor's own conduct and the injury proximately resulting from that conduct. "Alabama law is clear that . . . where the actions of two or more tortfeasors combine, concur, or coalesce to produce an injury, each tortfeasor's act is considered to be the proximate cause of the injury . . . and each tortfeasor is jointly and severally liable for the entire injury." *General Motors Corp. v. Edwards*, 482 So. 2d 1176, 1195 (Ala. 1985). Joint tortfeasor liability is distinguished from derivative liability, however, and the case at bar is not about joint tortfeasor liability. In the second amended complaint, United seeks to hold Nationwide derivatively liable for alleged Waddell & Reed misconduct as Waddell & Reed's principal, partner, joint venturer, or co-conspirator. The court will not allow United to replay here its previously litigated case

5

about Waddell & Reed's alleged mass replacement misconduct.  As the court has earlier stated, these claims derived from Nationwide's relationship with Waddell & Reed should have proceeded in conjunction with the litigation that United brought against Waddell & Reed in Alabama.

United also contends that *res judicata* does not bar its claims against Nationwide because Waddell & Reed was exonerated by a "personal defense" – that is, that Waddell & Reed was not a stranger to the contract with United and could not be held liable for tortious interference.  United cites no sufficiently analogous case to adequately support its position in this regard, and the court has found none.

*II. Direct Liability Claims*

The court is of the opinion that the alleged "direct" liability claims against Nationwide – claims that were not properly pled – are little more than a creative attempt to survive summary judgment on *any* claim, so that United can ultimately re-litigate *every* claim – that is, the entire mass replacement case.  The court will, nevertheless, address each claim individually.[3]

The second amended complaint sets forth claims alleging Nationwide's misconduct in conjunction with Waddell & Reed in effecting a mass replacement of United policies.  Now, in response to the summary judgment motion, United asserts that this case is about the repeated wrongful acts of Nationwide itself – not the acts of Waddell & Reed.  In furtherance of this

---

[3]United asserts that it should survive summary judgment and be allowed further discovery regarding these claims because of the phased/bifurcated approach adopted in the case management order. The court is unpersuaded by this argument.  Comprehensive discovery has already been propounded and submitted as exhibits in this matter.  United even admits that it "has presented voluminous evidence of [independent and unlawful] Nationwide misconduct."  This attempt at prolongation of a case which never should have been filed in the first instance approaches disingenuousness.

position, United has alleged four instances of individual Nationwide misconduct or inaction. First, United asserts that Nationwide made misrepresentations about the extra-credit ("bonus") rider on its "Select Plus" annuity. Second, according to United, Nationwide improperly accepted replacements into its "Select" annuity. Third, the plaintiff alleges that Nationwide failed to ensure the suitability of variable annuity replacements. Finally, United contends that Nationwide insisted on receiving "conversion" opportunities on United life insurance policies.

Regarding Nationwide's "Select Plus" annuity, United asserts that the defendants made misrepresentations regarding the bonus rider because, according to United's expert, the rider had no "break-even point." The break-even point is a future time when, at a certain rate of return, the annuity holder will benefit equally from electing or not electing the bonus rider. The plaintiff supports its assertion that the Select Plus has no break-even point with no more than conclusory allegations and unfounded speculation. It appears that United's expert has simply miscalculated the Select Plus break-even point. This fact is inconsequential, however, because United has offered no evidence showing that this alleged misrepresentation about the break-even point bears any connection to the mass replacement scheme it alleges in the complaint.

United further asserts that Nationwide employees misinformed some Waddell & Reed advisors regarding the Select Plus bonus rider's effect in offsetting charges incurred from surrendering another annuity. Again United presents conclusory allegations, and again the allegations do not support United's claims of a mass replacement scheme.

Finally, in regard to the Select Plus bonus rider, United contends that Nationwide's disclosures were misleading because customers were not informed that if the policy was surrendered before seven years, Nationwide would not refund costs for the rider. As the

7

defendants note, an insurance company need not state the obvious – that a cost, once assessed and paid, will not usually be refunded. Further, United again fails to show how this allegation supports the mass replacement scheme claims set forth in the complaint.

United next asserts that Nationwide improperly permitted Waddell & Reed to use its "Select" annuity for replacements. The plaintiff has not shown that such action is unlawful, however. A replacement is improper only if it is "unsuitable," which brings the analysis to United's next contention – that Nationwide failed to satisfy an obligation to ensure the suitability of transactions involving replacements of United annuities. While United points to no statute or rule establishing that Nationwide had such a legal duty, the general agent agreement between Nationwide and Waddell & Reed shows that the defendants took such a duty into consideration and contracted with Waddell & Reed to fulfill the obligation. It is the broker-dealer – in this case Waddell & Reed – which has the contact with the customer. Common sense dictates that it is the broker-dealer's responsibility to assess a customer's circumstances, recommend suitable transactions, and review the transactions for suitability. Further, once again United fails to show how these allegations are connected to the allegations set forth in the complaint.

Finally, United asserts that Nationwide insisted on receiving contractual "conversion" options in United's life insurance policies. The complaint alleges a mass replacement scheme of United annuities – not life insurance policies. This eleventh-hour assertion regarding life insurance policies appears to be misplaced. Further, United does not allege that this Nationwide conduct resulted in even a single conversion.

United's allegations of direct Nationwide misconduct and inaction do not state the claims for relief set forth in the complaint. No genuine issue of material fact exists in regard to these direct claims, and they should be dismissed as a matter of law.

The court is also persuaded by Nationwide's statute of limitations argument and finds that the continuing tort doctrine does not apply in this case. Further analysis of this argument is unnecessary, however, as the court has already determined that this case should be dismissed on the grounds of *res judicata* and collateral estoppel and because the plaintiff has failed to show that a genuine issue of material fact exists for trial.

## Conclusion

For the foregoing reasons, the court finds that the defendants' motion for summary judgment is well-taken and shall be granted. A separate order in accord with this opinion shall issue this day.

This, the 15th day of June, 2006.

/s/ Neal Biggers
_____
**NEAL B. BIGGERS, JR.
SENIOR U.S. DISTRICT JUDGE**